UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-00128-TBR

**RICHARD BRYANT,**
**individually and on behalf of**
**THE ESTATE OF KIRA BRYANT**                                                  **PLAINTIFF**

**v.**

**JAMISON TURNEY,** *ET AL.*                                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Dedra Turney's Motion to Dismiss. Def.'s Mot. Dismiss, Docket Number ("DN") 24. The Plaintiff has responded. Pl.'s Resp., DN 29. The Defendant has replied. Def.'s Reply, DN 35. This matter is now ripe for adjudication. Having considered the matter and being fully advised, the Defendant's motion is DENIED.

### I.

The facts underlying this matter give rise to a legal issue of first impression in Kentucky law. The Court must determine whether a beneficiary of an estate has standing to maintain a wrongful death action against parties and for claims that the estate's duly appointed personal representative has refused to pursue in a previously filed wrongful death action. In other words, where a personal representative has instituted a wrongful death action but has refused to pursue certain claims and parties, may a beneficiary bring a separate wrongful death action to pursue those claims and parties? Although an issue of first impression, Kentucky law is not entirely silent on the topic. In Kentucky, a beneficiary may bring a wrongful death action where the personal representative has altogether refused to bring such an action or where there is evidence of fraud or collusion between the personal representative and the potentially liable parties. Extending this principle to the facts of the present case, the Court holds that a beneficiary has

1

standing to bring a wrongful death action for those claims and against those parties that the personal representative has refused to pursue in the underlying wrongful death action. This outcome is a logical extension of Kentucky law and would likely be reached by a Kentucky court considering the issue.

## II.

On June 13, 2011, 14-year-old Kira Bryant ("Kira"), was severely injured in a motorcycle accident in Paducah, Kentucky. At the time of the accident, Kira was a passenger on the motorcycle driven by her stepfather, Jamison Turney ("Jamison"). Although the details are still the subject of discovery, it is alleged that Jamison was under the influence of alcohol at the time of the accident. The motorcycle was owned by Paducah Nissan, LLC ("Paducah Nissan"), Jamison's employer. Tragically, Kira succumbed to her injuries and died on June 14, 2011.

On July 5, 2011, Dedra Turney ("Dedra"), Kira's mother, was appointed administratrix and personal representative of her daughter's estate by the Probate Division of the McCracken Country District Court. On that same day she filed a wrongful death action against her husband, Jamison, in the McCracken County Circuit Court. She only alleged negligence against her husband, not gross negligence or recklessness, which would have allowed Dedra to seek punitive damages from Jamison. *See* State Ct. Compl., DN 29-5, ¶ 9; Am. State Ct. Compl., DN 24-7, ¶ 12.

On July 13, Kira's biological father, and plaintiff in the case at bar, Richard Bryant ("Richard"), petitioned to have Dedra removed and himself appointed as administrator of Kira's estate. Richard sought to remove Dedra for at least two reasons. First, Richard argued that Dedra had a conflict of interest that rendered her incapable of administering the estate because the wrongful death action was instituted against her current husband and any recovery beyond

available insurance limits would be collected from Dedra and Jamison's marital assets. Second, the wrongful death action was insufficiently pled because it failed to name Paducah Nissan as a defendant.[1]

By order on July 19, 2011, the McCracken County District Court denied Richard's petition for removal. In a subsequent order clarifying its findings, the probate court affirmed its denial and found that "although there is potential for a conflict of interest with [Dedra] serving as Administratrix, that issue is not yet ripe. [Dedra] has exhibited no indication that she would perform her duties in a manner that is contrary to the interests of the estate." Probate Ct. Order of Aug. 12, 2011, DN 24-6, p. 2.

Two days after the petition for removal was denied, Richard filed his original complaint in federal court, seeking to recover against Jamison, Paducah Nissan, and Dedra for loss of consortium with his minor daughter. On September 6, 2011, Richard amended his complaint and added a cause of action which alleges that Kira's wrongful death was directly and proximately caused by the Defendants' gross negligence and recklessness. The amended complaint also seeks damages for Kira's pain and suffering, medical bills, and funeral expenses.

Richard brought suit in federal court based on diversity jurisdiction found in 28 U.S.C § 1332. Richard is a citizen of Alabama. The Defendants are citizens of Kentucky. At the time of her death, Kira was also a citizen of Kentucky.

On November 17, 2011, Dedra moved to dismiss the first amended complaint. She asserts three grounds for dismissal. First, the Court lacks subject-matter jurisdiction to hear the case under the "probate exception" established in *Markham v. Allen*, 326 U.S. 490 (1946). Second, diversity jurisdiction was destroyed when Richard sued for wrongful death "on behalf of

---

[1] Paducah Nissan was subsequently added as a defendant in the state court case by an amended complaint filed on September 16, 2011. *See* Am. State Ct. Compl., DN 24-7. Like the original complaint against Jamison, Dedra only alleges negligence against Paducah Nissan, not gross negligence or recklessness. *Id.* at ¶ 12.

the Estate of Kira Bryant." Finally, Richard is without standing to pursue a wrongful death action under Kentucky law because he has not been appointed administrator and personal representative of Kira's estate. The Court will consider each argument in turn.

### III.

The Federal Rules of Civil Procedure provide that a party may file a motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," *Am. Telecom Co. v. Leb.*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.*, 491 F.3d 320, 330 (6th Cir. 2007). "A district court must generally confine its Rule 12(b)(1) or Rule 12(b)(6) ruling to matters contained within the pleadings and accept all well-pleaded allegation as true." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.*, 368 F.3d 569 (6th Cir. 2004).

### IV.

The Court does not lack subject-matter jurisdiction under the "probate exception" because, under Kentucky law, any recovery in a wrongful death action is not property of the

estate. Rather, a wrongful death recovery accrues to the estate's beneficiaries, and the Court would not "interfere with probate proceedings" or exercise control of property in the custody of the state court by retaining jurisdiction in this case.

The probate exception is not statutory. It is a court-made rule first recognized in *Markham v. Allen*, 326 U.S. 490 (1946). S*ee Lepard v. NBD Bank*, 384 F.3d 232, 237 (6th Cir. 2004) ("The probate exception is a practical doctrine designed to promote legal certainty and judicial economy by providing a single forum of litigation, and to tap the expertise of probate judges by conferring exclusive jurisdiction on the probate court."). The exception has two components. First, "a federal court has no jurisdiction to probate a will or administer an estate . . . ." *Markham*, 326 U.S. at 494. Second:

> [F]ederal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate court proceedings or assume general jurisdiction or control of the property in the custody of the state court.

*Id.* (citations omitted). In other words, where a federal court is not probating a will or administering an estate the court may retain jurisdiction so long as it "does not interfere" with the probate proceedings.

In *Marshall v. Marshall*, 547 U.S. 293, 311 (2006), the Supreme Court acknowledged that the "[l]ower courts have puzzled over the meaning of the words 'interfere with the probate proceedings,' and some have read those words to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." In an effort to clarify *Markham*'s holding, the *Marshall* Court explained:

> [W]e comprehend the 'interference' language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. Thus, the probate exception reserves to state probate courts the probate

5

> or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311-12 (citations omitted). As *Marshall* clarified, the *Markham* probate exception applies only where a federal court: 1) seeks to probate a will, 2) attempts to administer the estate, or 3) otherwise seeks to control property that is in the custody of the probate court. None of these circumstances are present in the case at bar.

The probate exception is inapplicable here because, under Kentucky law, the proceeds of a wrongful death recovery are not part of the *res* of the estate in the custody of the probate court. As stated by the Kentucky Supreme Court in *Moore v. Citizens Bank of Pikeville*, 420 S.W.2d 669, 672 (Ky. 1967):

> KRS 411.130 creates a cause of action for wrongful death. . . . It has been pointed out that the wrongful death action is not derivative. It is brought to compensate survivors for loss occasioned by the death and not to recover for injuries of the decedent. . . . The persons entitled to benefits under KRS 411.130 are to be determined at the time of death of the person wrongfully killed. This recovery is not made available to the decedent's creditors except under KRS 411.130(2)(e). *The recovery is not for the benefit of the estate, but is for the next of kind as determined by the statute.*

(emphasis added). In Kentucky, any wrongful death recovery is distributed to the decedent's beneficiaries as mandated in KRS § 411.130(2)(a)-(d). The proceeds of the wrongful death action are only subsumed into the *res* of the estate where none of the beneficiaries described in KRS 411.130(2) exist. *See* KRS § 411.130(2)(e) ("If the deceased leaves no widow, husband or child, and if both father and mother are dead, then the whole of the recovery shall become a part of the personal estate of the deceased . . . ."). Therefore, the wrongful death recovery is not part of the *res* of the estate in the custody of the probate court because the recovery passes outside of the probate estate save for the limited exception found in KRS § 411.130(2)(e). Kentucky's

legislature has assigned the estate's personal representative the task of distributing the wrongful death proceeds but not because those proceeds are the estate's property. *Moore* and KRS § 411.130 state that such proceeds are not estate property, and the Court cannot "interfere with probate proceedings" where the *res* at issue is not part of the estate. Therefore, the probate exception is not implicated in this case, and the Court may exercise jurisdiction over the wrongful death action should the parties be diverse and Richard have standing.[2]

## V.

The Court may exercise jurisdiction because the parties are completely diverse. Richard filed his federal court case "individually and *on behalf of* the Estate of Kira Kelly Bryant." For the purposes of diversity jurisdiction "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ." 28 U.S.C. § 1332(c)(2). If Richard were attempting to act as the personal representative of Kira's estate, then diversity would be destroyed and this Court would lack jurisdiction because all parties would be deemed citizens of Kentucky.

Despite the caption used by Richard, the Court is not divested of diversity jurisdiction.

---

[2] Even though the probate exception is inapplicable, Dedra argues that the Court has discretion to abstain in cases where the issues are "probate-like." In support of her position, Dedra relies on *Rice v. Rice Found.*, 610 F.2d 471 (1979). In *Rice*, the Seventh Circuit noted that "[e]ven where a particular probate-like case is found to be outside of the scope of the probate exception, the district court may, in its discretion, decline to exercise jurisdiction." *Id.* at 477. The Court declines to follow *Rice* for three reasons. First, the "discretionary exception" is not supported by the Supreme Court's most recent decision concerning the probate exception. *See Marshall v. Marshall*, 547 U.S. 293 (2006). *Marshall* reaffirmed that the probate exception applies only in limited circumstances, and a "discretionary exception" for probate-like cases would run counter to the narrow confines of the probate exception. It would be inapposite for the Supreme Court to establish a narrow probate exception while allowing an expansive field of abstention to exist for cases that merely border on probate. Second, *Rice* arises from the Seventh Circuit, and although the case has found limited recognition in the Sixth Circuit, no Sixth Circuit Court of Appeals has found *Rice* to be outcome-determinative. *See Lepard v. NBD Bank*, 384 F.3d 232, 238 (6th Cir. 2004); *Bedo v. McGuire*, 767 F.2d 305, 307 (6th Cir. 1985); *Uzielli v. Frank*, 137 F. App'x 795, 801 (6th Cir. 2005). Finally, the Court is unaware of any circumstance in which it may decline jurisdiction in its sole discretion. Even before *Rice* was decided, the Supreme Court declared that federal courts have a "virtually unflagging obligation" to "exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citations omitted). The recognition of a "discretionary exception" to jurisdiction for "probate-like" proceedings would weaken the Court's obligation to exercise jurisdiction where it is exists.

Richard is not and has never been the personal representative of Kira's estate. In fact, the probate court specifically denied his attempt to have himself appointed personal representative. In his response brief Richard maintains that he "inartfully" styled the caption on his federal court complaint and did not intend to bring a claim "individually and on behalf of the Estate of Kira Kelly Bryant." Rather, he intended to bring his complaint "individually and *as a beneficiary of* the estate of Kira Kelly Bryant." Although Richard has not amend his pleadings, the Court finds that Richard filed suit individually and as a beneficiary of Kira's estate and that he is not cloaked with her citizenship by 28 U.S.C. § 1332(c)(2). Accordingly, diversity jurisdiction is not destroyed, and the Court is vested with the authority to hear this case.

## VI.

Finally, the Court considers the most pertinent issue: whether Richard has standing to maintain this wrongful death action. Based on a logical extension of Kentucky law, and finding that a Kentucky court considering the issue would arrive at the same outcome, the Court holds that Richard has standing to maintain this wrongful death action as a beneficiary of Kira's estate.

Kentucky's wrongful death statute provides that a wrongful death "action shall be prosecuted by the personal representative of the deceased." KRS § 411.130(1). "The right is exclusive and no one other than the personal representative has the legal capacity to maintain such an action . . . ." *Louisville & N.R. Co. v. Turner*, 162 S.W.2d 219, 221 (Ky. 1942) (citations omitted). Accordingly, "[w]hen a personal representative has been regularly appointed his authority to bring the action for wrongful death is exclusive." *Spangler's Adm'r v. Middlesboro*, 191 S.W.2d 414, 415 (Ky. 1945) (citation omitted). Because the wrongful death statute

> confers upon the personal representative, and no one else, the right to maintain an action in tort for damages resulting from death . . . we are of the opinion that when the personal representative has been regularly appointed, his authority is exclusive and the power is lodged in him alone . . . to prosecute the action to a

> conclusion . . . . It results from this that neither the beneficiaries of the recovery nor any other person can divest the personal representative of this statutory authority.

*City of Louisville v. Hart's Adm'r*, 136 S.W. 212, 213 (Ky. 1911). Stated in the negative, one who is not the personal representative of an estate may not maintain a cause of action for wrongful death. *See Everley v. Wright*, 872 S.W.2d 95 (Ky. App. 1993) (affirming dismissal of wrongful death action where no one, including the decedent's wife who was pursuing the claim, had been appointed personal representative); *Lewis v. Harper*, 371 F.2d 555 (6th Cir. 1967) (applying Kentucky law and affirming dismissal of wrongful death claim not brought by personal representative).

Despite the seemingly concrete nature of this rule, two exceptions exist. First, where a personal representative refuses to bring a wrongful death action, the decedent's beneficiaries may pursue recovery. *See Wheeler v. Hartford Accident & Indem. Co.*, 560 S.W.2d 816, 819 (1978); *Harris v. Rex Coal Co.*, 197 S.W. 1075, 1075 (Ky. 1917). Second, the beneficiaries may also maintain a wrongful death action where there is fraud or collusion between the personal representative and the potentially liable party. *See Turner*, 162 S.W.2d at 221; *Leach v. Owensboro City Ry. Co.*, 125 S.W. 708, 710 (Ky. 1910); *McLemore v. Sebree Coal & Mining Co.*, 88 S.W. 1062, 1063 (Ky. 1905). Absent a showing of one of these exceptions, a beneficiary may not bring a wrongful death action of his own accord.

### A.

The fraud exception to the personal representative's exclusive authority to bring a wrongful death case is inapplicable in the present case. The Federal Rules of Civil Procedure require a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Richard has not sufficiently complied with Rule 9(b) to

9

trigger the fraud exception.  The Court has reviewed Richard's amended complaint, and although it alleges that Dedra "failed to include certain cognizable claims that could have been brought," there is no particular allegation that Dedra failed to bring such claims because of fraud or collusion between the parties.  Am. Compl., DN 10, ¶ 4.  "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relies; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'"  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)).  Richard has insufficiently pled allegations of fraud and collusion between the Defendants.  Furthermore, this argument was raised for the first time in Richard's response brief, and is, therefore, not properly before the Court.  In the absence of a particularized pleading of fraud and collusion between the Defendants, the Court finds that Richard lacks standing to bring a wrongful death action under the fraud exception.

### B.

Although Richard's pleadings are insufficient to trigger the fraud exception, the Court finds that he has standing to maintain this wrongful death action as a beneficiary because Dedra has refused to include certain parties and claims in her state court wrongful death action.  The Court's holding rests on the exception recognized in *Harris v. Rex Coal Co.*, 197 S.W. 1075 (1917), and reaffirmed in *Wheeler v. Hartford Accident & Indem. Co.*, 560 S.W.2d 816 (1978).  Although those cases recognized that the exception applies where the personal representative refuses to bring the wrongful death action entirely, this exception logically extends to the circumstances *sub judice*.

On July 21, 2011, Richard sent a demand letter to Dedra requesting she add herself and

Paducah Nissan as parties to the wrongful death action and assert claims for gross negligence, recklessness, and punitive damages against Jamison.  Am. Compl., DN 10, ¶ 5.  Although refusing to add herself as a party, Dedra subsequently added Paducah Nissan as a defendant.  Despite Richard's request, she continues to only assert a claim for negligence against both Paducah Nissan and Jamison.  In her reply to her motion to dismiss, Dedra reasons that she has not sought punitive damages against Jamison because such damages will not be recoverable from his insurer.  *See* Def.'s Reply, DN 35, p. 2.  Regardless of what insurance may be available, the question is whether Jamison is potentially liable for such damages.  In a case where it is alleged that Jamison was intoxicated at the time of the accident, it is plausible that he may be liable for punitive damages.  Dedra's outright refusal to purse those damages permits Richard to invoke the exception recognized in *Harris* and *Wheeler* and to sue Jamison for gross negligence and recklessness in his capacity as a beneficiary.

Additionally, Richard requested that Dedra bring suit against herself because she allowed Kira to ride the motorcycle with Jamison even though Dedra knew Jamison was intoxicated at the time.  In her reply brief Dedra admits that she has not and will not file a claim against herself.  *See id.*  Her refusal is based on the assertion that "Dedra has named the parties that would realistically be held legally responsible for the accident that took [Kira's] young life."  *Id.* at 1.  The fact remains, however, that Richard has asserted a plausible claim against Dedra, which she refuses to pursue.  Although the Court takes no position on the issue, and future proceedings will bear out the substance of the claim, the allegations in the complaint make it plausible that Dedra may bear some portion of the liability for Kira's death.  Accordingly, her refusal to sue a potentially liable party authorizes Richard to pursue that party as a beneficiary of the decedent's estate.

The Court is well-aware that the existence of parallel federal and state wrongful death actions greatly complicates the legal issues and may lead to incongruous results. Despite this obvious drawback, "[t]he Supreme Court, in general, has held that federal courts need not dismiss or stay an action on account of the existence of parallel litigation in state court." Erwin Chemerinsky, *Federal Jurisdiction* 901 (6th ed. 2012) (citing *Stanton v. Embrey*, 548, 554 (1877)). Indeed, where a federal court has jurisdiction, it has a "virtually unflagging obligation" to exercise it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). This is even true where "it is economically wasteful to have the same litigation occurring in two courts when only one will actually decide the issue of the case." Chemerinsky, *supra*, at 911. Because the Court has jurisdiction to hear this case and Richard has standing to pursue it, the case will proceed despite a state court action addressing substantially similar issues.

## CONCLUSION

Defendant Debra Turney has moved to dismiss Plaintiff Richard Bryant's amended complaint. For all of the foregoing reasons IT IS HEREBY ORDERED that Defendant Dedra Turney's motion to dismiss is DENIED.

IT IS HEREBY FURTHER ORDERED that the Plaintiff's motion to strike (DN 33) is MOOTED.