UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-00128-TBR

RICHARD BRYANT,
individually and as a beneficiary of
THE ESTATE OF KIRA BRYANT                                          PLAINTIFF

v.

JAMISON TURNEY, *ET AL.*                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Plaintiff's motion to lift the previously granted protective order. Pl.'s Mot. Lift Protective Order, Docket Number ("DN") 48. Defendant Jamison Turney has responded. Def.'s Resp., DN 50. The Plaintiff has replied. Pl.'s Reply, DN 53. This matter is now ripe for adjudication. For the following reasons, the Plaintiff's motion is GRANTED.

### I.

The issue is whether the Court should lift the previously granted protective order and allow the Plaintiff to depose Defendants Jamison Turney and Dedra Turney. With respect to Dedra Turney, the Court finds that the protective order must be lifted because of the "wrongful conduct" exception to the husband-wife privilege found in Kentucky Rule of Evidence 504. With respect to Jamison Turney, the Court finds the protective order must be lifted the Fifth Amendment privilege against self-incrimination cannot be invoked in advance of questioning.

### II.

On June 13, 2011, the decedent, 14-year-old Kira Bryant ("Kira"), was severely injured in a motorcycle accident in Paducah, Kentucky. At the time of the accident, Kira was a passenger on the motorcycle driven by her stepfather, Defendant Jamison Turney ("Jamison").

1

Although the details are still the subject of discovery, it is alleged that Jamison was under the influence of alcohol at the time of the accident. The motorcycle was owned by Defendant Paducah Nissan, LLC ("Paducah Nissan"), Jamison's employer. Tragically, Kira succumbed to her injuries and died on June 14, 2011.

On July 5, 2011, Defendant Dedra Turney ("Dedra"), Kira's mother, was appointed administratrix and personal representative of her daughter's estate by the Probate Division of the McCracken Country District Court. On that same day she filed a wrongful death action against her husband, Jamison, in the McCracken County Circuit Court.[1] On July 13, Kira's biological father, and plaintiff in the case at bar, Richard Bryant ("Richard"), petitioned to have Dedra removed and himself appointed as administrator of Kira's estate. By order on July 19, 2011, the McCracken County District Court denied Richard's petition for removal. In a subsequent order clarifying its findings, the probate court affirmed its denial and found that "although there is potential for a conflict of interest with [Dedra] serving as Administratrix, that issue is not yet ripe. [Dedra] has exhibited no indication that she would perform her duties in a manner that is contrary to the interests of the estate." Probate Ct. Order of Aug. 12, 2011, DN 24-6, p. 2.

Two days after the petition for removal was denied, Richard filed his suit in federal court seeking to recover against Jamison, Paducah Nissan, and Dedra for loss of consortium with his minor daughter. *See* Compl., DN 1. On September 6, 2011, Richard amended his complaint and added a wrongful death cause of action alleging that Kira's death was directly and proximately caused by the Defendants' gross negligence and recklessness. *See* Am. Compl., DN 10.

On November 4, 2011, the McCracken County Circuit Court charged Jamison with murder for his role in Kira's death. Mot. Protective Order, DN 40, pp. 1-2. In light of the

---

[1] Paducah Nissan was subsequently added as a defendant in the state court case by an amended complaint filed on September 16, 2011. *See* Am. State Ct. Compl., DN 24-7

2

ongoing criminal case, Jamison moved for a protective order that would prohibit Richard from taking the depositions of Jamison or Dedra in this civil action. As grounds for the protective order Jamison invoked his Fifth Amendment privilege against self-incrimination. Furthermore, Jamison relied upon the husband-wife privilege found in Kentucky Rule of Evidence 504 and argued that he would invoke the spousal testimony and martial communications privileges to prevent Dedra from testifying about the events giving rise to this case. On January 10, 2012, the Court granted Jamison's motion and entered a protective order, thereby prohibiting Richard from deposing Jamison or Dedra. Order of Jan. 10, 2012, DN 42. Richard now moves to lift the protective order and seeks to depose the Defendants.

### III.

This case is before the Court based on diversity of citizenship, *see* 28 U.S.C. § 1332, and the substantive law of Kentucky governs Richard's causes of action. *See Erie Railroad v. Tompkins*, 304 U.S. 64 (1938). Accordingly, the privileges asserted, if related to the state law claims, are governed by state law. Fed. R. Civ. P. 501 ([I]n any civil action, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *see Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990) ("In a civil case involving claims based on state law, the existence of a privilege is to be determined in accordance with state, not federal, law." (citing Fed. R. Civ. P. 501)). Additionally, Jamison may invoke privileges outside of state law, such as those arising under the Constitution. Fed. R. Civ. P. 501.

### IV.

Richard seeks to lift the protective order prohibiting him from deposing Jamison and Dedra. Jamison argues that Richard may not depose Dedra because he has invoked Kentucky's

husband-wife privilege found in Kentucky Rule of Evidence 504. Additionally, Jamison claims that Richard may not take his deposition because he has and will continue to invoke the Fifth Amendment privilege against self-incrimination. The Court considers each of these arguments in turn.

A.

The protective order must be lifted and Richard be allowed to depose Dedra because the "wrongful conduct" exception prevents Jamison from invoking Kentucky's husband-wife. Kentucky Rule of Evidence 504 contains two marital privileges, the "spousal testimony" privilege and the "marital communications" privilege. These "husband-wife" privileges may be asserted in both criminal and civil cases in Kentucky and are therefore available to Jamison in this diversity action in federal court.[2] Under the spousal testimony privilege, "[a] party has a privilege to prevent his or her spouse from testifying against the party as to events occurring after the date of their marriage." Ky. R. Evid. 504(a). Under the marital communications privilege, "[a]n individual has a privilege to refuse to testify and prevent another from testifying to any confidential communications made by the individual to his or her spouse during their marriage." Ky. R. Evid. 504(b). These privileges are subject to several exceptions, however. One such exception, the "wrongful conduct" exception, provides that "[t]here is no privilege under [Kentucky Rule of Evidence 504] in any proceeding in which one (1) spouse is charged with wrongful conduct against the person or property of a minor child of either." Ky. R. Evid. 504(c)(2)(B). This exception covers all wrongful conduct, not just criminal conduct, committed against a spouse's minor children. *See* Robert Lawson, *Kentucky Evidence Law Handbook*, §

---

[2] The statutory predecessor to the spousal testimony privilege "applied in both civil and criminal proceedings. The language of KRE 504(a) is consistent with this position, and there is no reason to believe that the latter might be more narrowly construed than its predecessor." Robert Lawson, *Kentucky Evidence Handbook*, § 5.10[3] (4th ed. 2003). The marital communications privilege also "applies in both civil and criminal cases . . . ." *Id.* § 5.10[4].

5.10[6] (4th ed. 2003).

In his response to Richard's motion, Jamison argues that Richard may not assert the wrongful conduct exception because he has no standing to bring a wrongful death action on behalf of Kira's estate. Jamison's argument rehashes the position put forward by Dedra in her motion to dismiss currently pending before the Court. *See* Dedra's Mot. Dismiss, DN 24. The Court, in a separate memorandum opinion and order entered on this day, denied Dedra's motion because Richard has standing. Accordingly, Jamison has failed to put forth any argument as to why the wrongful conduct exception in Rule 504(c)(2)(B) should not apply and Richard be barred from deposing Dedra.

The express terms of the wrongful conduct exception found in Rule 504(c)(2)(B) make it clear that the protective order must be lifted as it relates to Dedra. Simply put, Jamison may not invoke the husband-wife privileges found in Rule 504(a) and 504(b) where he has been charged with wrongful conduct against Dedra's minor child, Kira. Richard alleges that Jamison recklessly caused Kira's death. These accusations clearly charge Jamison with wrongful conduct. Where a spouse is charged with such conduct against the minor child of either spouse, no husband-wife privileges may be asserted or invoked. Ky. R. Evid. 504(c)(2)(B). There is simply no privilege available in such situations. Because Jamison may not invoke the husband-wife privilege in this case, the protective order prohibiting Richard from deposing Dedra must be lifted.

**B.**

The protective order must also be lifted and Richard be allowed to depose Jamison because Jamison may not make a blanket assertion of the Fifth Amendment privilege. Although Richard may depose Jamison, nothing in this opinion should be construed as preventing Jamison

5

from invoking his Fifth Amendment privilege against self-incrimination during any future testimony he may give in this case. Merely because Jamison may be compelled to attend a future deposition does not mean that his Fifth Amendment privilege has been waived in any manner.

Under the Fifth Amendment, "[n]o person shall be . . . compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. "This privilege against self-incrimination 'protects against any disclosures the witness reasonably believes could be used in a criminal prosecution [against him] or could lead to other evidence that might be so used." *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1074 (6th Cir. 1990) (quoting *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972)). "The privilege may be invoked in the course of any proceeding, criminal or civil, [because it] does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *Id.* (citations and quotations omitted). For the privilege to be properly invoked, there must be a valid assertion of the Fifth Amendment privilege. *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983). "A valid assertion of the [F]ifth [A]mendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination. A witness must, however, show a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution." *Id.* (citations omitted). Finally, "[a] blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted with respect to particular questions . . . ." *Id.* (citing *Hoffman v. United States*, 341 U.S. 479, 486-88 (1951)).

Jamison's original motion for a protective order is most property categorized as a blanket assertion of the Fifth Amendment privilege. *See* Mot. Protective Order, DN 40, pp. 2, 5-6. Jamison did not identify any particular questions against which he was asserting the privilege

6

and has not been in any proceeding in which the privileged could be invoked. Rather, he merely claimed that "[i]t appears that there are certain issues that have been raised by the Plaintiff that cannot be resolved until such time as Jamison Turney can no longer assert the Fifth Amendment Privilege." *Id.* at p. 5. As pointed out above, the invocation of the Fifth Amendment privilege must be done for reasonable cause and cannot be claimed in advance of questioning. *In re Morganroth*, 718 F.2d at 167. Once the privilege is invoked it is up to the court to "determine the propriety of the refusal to testify." *Id.* (citation omitted). Although it is apparent to the Court that Jamison will readily, and with likely good cause, invoke the Fifth Amendment privilege in any deposition or other proceeding at the stage, it is simply inappropriate for him to continue with blanket protection. Richard is entitled to know the questions upon which Jamison will invoke the privilege, even if the privilege is repeatedly invoked.

## CONCLUSION

Plaintiff Richard Bryant has moved to lift the Court's prior protective order prohibiting the depositions of Defendants Jamison Turney and Dedra Turney. For all of the foregoing reasons, IT IS HEREBY ORDERED that the Plaintiff's motion is GRANTED.